UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-363 (ADM/ECW)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JUSTIN MICHAEL KITTLESON,

    Defendant.

**GOVERNMENT'S SENTENCING POSITION**

The United States, by its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Lindsey E. Middlecamp, Assistant United States Attorney, submits this memorandum in connection with the sentencing of the defendant, Justin Michael Kittleson. As set forth herein, the government respectfully requests that this Court impose a sentence of 130 months, representing 46 months on Count 1 and 84 months on Count 2, to be served consecutively. Additionally, the government requests that restitution to the victim of his crime be ordered in the amount of $22,756.35. This sentence is sufficient, but no greater than necessary, to accomplish the goals set forth in 18 U.S.C. § 3553.

## I. THE INSTANT OFFENSE

Kittleson's offense conduct on September 24, 2022 was predatory and quite nearly deadly. He came to a crowded public grocery store filled with families doing their shopping, armed with a loaded gun. He pulled his hooded

sweatshirt up close around his face and wore a mask further shielding his identity. He waited, surveying for the right target. He saw a nice car park in front of the grocery store and presumably, decided then and there that he would take it, because he followed its occupants SJ and RW into the grocery store.

SJ recalls seeing Kittleson, and the fact that he seemed to stalk her and her father throughout the store while they did their shopping. Although Kittleson now, in the pendency of his sentencing, shows appreciation for the fact that the two people he targeted are human beings who deserved empathy and safety like anyone in his own family, Kittleson apparently did not recognize their humanity or their vulnerability as he followed them that day. Instead, Kittleson waited until the moment SJ and RW loaded their groceries at the car, at which point he confronted SJ, pointed his gun at her, and demanded her car keys.

SJ's father, a senior citizen and a veteran, sprung into action to distance his daughter from the threat of the gun. A struggle ensued. SJ and RW believe that RW had fallen to the ground, with Kittleson was standing over RW, when Kittleson intentionally pointed and fired the gun, grazing RW's ear. For his part, Kittleson asserts the gun went off in the midst of the struggle, and claims he did not intentionally shoot at RW. Regardless of this dispute, one thing the parties all agree on is that RW was mere millimeters away from potentially

losing his life, and SJ could have lost her father, all because Kittleson engaged in a heinous and violent attack before jumping in SJ's vehicle and driving away.

Thankfully, Kittleson was identified, apprehended, and taken into custody. On April 26, 2023, he accepted responsibility for his actions and pled guilty to both Count 1 (Carjacking) and Count 2 (Using, Carrying, Brandishing, and Discharging a Firearm During and In Relation to a Crime of Violence) of the federal Indictment.

## II. THE ADVISORY GUIDELINES RANGE

Although the parties agree that based on the current sentencing guidelines, Kittleson's criminal history points result in his falling within Category IV, the anticipated amendment to USSG §4A1.1(d) would result in his falling within Category III. The Government does not oppose the request by the defense that Kittleson be sentenced in accordance with the amended guidelines, and that as to Count One, his resulting guidelines range would be 37 to 46 months' imprisonment.

The parties also agree that as to Count 2, Kittleson is subject to an 84-month mandatory sentence, to be served consecutively with any sentence issued on Count 1.

The United States recommends that the Court therefore sentence Kittleson to 46 months on Count 1, and 84 months on Count 2 to be served

consecutively, resulting in a total sentence of 130 months. The United States further recommends that the maximum 3 and 5-year terms of supervised release be imposed on Count 1 and Count 2, respectively.

### III. THE STATUTORY SENTENCING FACTORS

The government believes that the § 3553(a) factors do not support any type of variation from the requested Guidelines sentence other than the anticipated amendment affecting his criminal history calculation. Particularly relevant are (1) the nature and circumstances of the offense, (2) the defendant's history and characteristics, (3) the seriousness of the offense, to promote respect for the law, and to provide just punishment, (4) the need for deterrence, and (5) the need to protect the public from further crimes by the defendant. Based on the arguments below, the government believes that a top-of-the-guidelines sentence of 130 total months is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a).

#### A. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

On its face, this case presents a number of aggravating facts. Mr. Kittleson placed many lives at risk, and two lives most of all, by bringing a loaded gun to a highly populated grocery store in order to commit a violent carjacking. He stalked SJ and RW like prey, and he put SJ and RW through an extremely traumatizing incident which may permanently shake their sense of safety in moving about their daily lives. The callous disregard Kittleson

showed for his victims, and the selfish greed for a car that apparently motivated it, are bad enough; the fact that he took the time to follow his victims in and out of the grocery store, and still, with time to consider his actions, chose to target them in this violent fashion, are all facts that make this a particularly egregious carjacking. The full circumstances of this offense present a significant disregard for the law and public safety and merit a significant punishment.

### B. THE DEFENDANT'S HISTORY AND CHARACTERISTICS

Before the Court is a 20-year-old man who already has a violent criminal history despite his young age. When he was only 18 years old, Kittleson was caught by police in possession of a handgun and a magazine. (PSR ¶ 36.) The same year, Kittleson was charged with a violent assault that could have easily resulted in a shooting death. Specifically, Kittleson and another individual followed Kittleson's ex-girlfriend in a car and stole her cell phone. When she tried to get it back and then left in another car, the defendant began firing a gun towards the car with multiple victims inside. (PSR ¶ 37.)

Of particular concern, Kittleson was charged with these incidents in Hennepin County, pled guilty to them in April and August 2022, and was given another chance to be law abiding: his prison sentences were stayed, and he was released into the community on home monitoring. He should have been on his best possible behavior, and motivated to avoid further arrests while on

probation for these prior offenses, but instead, he engaged in the instant offense conduct, showing an escalation from his prior offenses.

Additionally, through his history of interactions with the state courts, the defendant has demonstrated a poor track record in abiding by lesser interventions. Kittleson's history shows failure to abide by the terms of probation, and successive felonies that were apparently not curbed by stayed sentences and release back into the community. A top-of-guidelines sentence, though significant, is warranted in light of this criminal history and his characteristics.

### C. A<small>DEQUATE</small> D<small>ETERRENCE FOR</small> C<small>RIMINAL</small> C<small>ONDUCT AND</small> E<small>NSURING</small> P<small>UBLIC</small> S<small>AFETY</small>

Sending a message of both specific and general deterrence is especially relevant in this case. The defendant is only 20 years old and he has already committed three different gun-related offenses. His two most recent offenses involve victims who, but for strokes of remarkable luck, could have been struck and killed by the bullets fired from Kittleson's guns. A significant sentence is appropriate to deter Kittleson who has demonstrated a pattern of escalating violence and callous disregard for public safety.

Moreover, According to the Minnesota Bureau of Criminal Apprehension, in 2021 there were 779 carjackings reported, with over 600 of those cases in Minneapolis alone. Minnesota Bureau of Criminal

Apprehension, *2021 Uniform Crime Report* (Aug. 2022), *available at* https://dps.mn.gov/divisions/bca/bca-divisions/mnjis/Documents/2021-Minnesota-Uniform-Crime-Report.pdf. By 2022, some news outlets understandably described the rate of carjacking crimes in the Twin Cities as a "crisis." *See, e.g.*, *Twin Cities Carjacking Crisis: A Closer Look at the Data*, CBS News (Feb. 3, 2022), https://www.cbsnews.com/minnesota/news/twin-cities-carjacking-data/ (describing carjackings as a "major problem" in the Twin Cities, "with hundreds of victims left to deal with the trauma"). These unprovoked and random crimes against the unwitting public directly impact the victims of those crimes and contribute to an overall sense of unease and fear among the community at large. A significant sentence in this case is necessary to deter others who may consider these senseless crimes.

### D. A Sentence of 130 Months Avoids Unwarranted Disparities

A sentence of 130 months is consistent with other sentences issued for similarly situated defendants in other violent carjacking cases. For example, in March of this year, a 19-year old defendant named Shamir Black was sentenced in this district to a sentence of 151 months. (*See* Court File No. 22-159 (WMW)). In January of 2023, another armed carjacker named Leon Bell who followed a woman at a commercial shopping location, flashed a gun (but did not engage in a physical struggle) and took her car received a sentence of

7

120 months. (*See* Court File No. 22-cr-89(1) (WMW/TNL). The 130-month sentence recommended by the government for Kittleson takes into account his unique circumstances, history, and conduct to the extent they differ from these other cases, but does not represent any unwarranted disparities with regard to other similarly situated defendants and their sentencings.

## IV.   CONCLUSION

For the reasons stated herein, the government respectfully requests the Court impose a sentence of 130 months' incarceration, followed by the maximum allowed supervised release term of three years for Count 1 and five years for Count 2, as well as restitution in the amount of $22,756.35.

Dated:    July 26, 2023                      Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s Lindsey E. Middlecamp*

BY: LINDSEY E. MIDDLECAMP
Assistant United States Attorney